NIU V. REVCOR

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-104-CV

XUXIAN NIU APPELLANT

V.

REVCOR MOLDED PRODUCTS APPELLEES

COMPANY AND ROB KNIGHT

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I. 
Introduction

In this employment discrimination suit, Appellant Xuxian Niu appeals from the trial court’s summary judgment in favor of Appellees Revcor Molded Products Company (Revcor) and Rob Knight.  We affirm.

II. 
Background

Knight is Revcor’s vice president of manufacturing.  In March 2001, Knight hired Niu, a Chinese American, as Revcor’s manufacturing engineering manager.  Niu’s job duties included, among other things, supervising the manufacturing engineering group, leading the “lean manufacturing process,” and developing and implementing the design and manufacture of new products.  Niu reported directly to Knight, who awarded him two discretionary pay raises during his first year of employment.  In November 2002, however, Revcor terminated Niu’s employment. 

Niu filed suit against Revcor and Knight for employment discrimination, intentional infliction of emotional distress, racial harassment, and retaliation.  Revcor and Knight then filed a traditional motion for summary judgment, supported by various summary judgment evidence, including the affidavits of Knight and Larry Brigman, vice president of human resources, and excerpts from the depositions of Brigman, Knight, and Niu.   

According to Brigman’s affidavit, in 2001, Revcor had suffered losses of approximately $1.2 million; therefore, it was forced to lay off fifty employees.  In 2002, despite turning a profit of approximately $380,000, Revcor laid off five more employees. 
 
Ultimately, Niu was terminated, according to Knight’s affidavit and deposition, because the lean manufacturing integration process had been completed and his skills were geared toward preparing and developing new products, an area for which there was a bleak business forecast at the end of 2002 and for 2003. 

Niu filed a response to Revcor’s and Knight’s motion for summary judgment, which was also supported by summary judgment evidence, including Niu’s own affidavit.  According to Niu’s affidavit, Knight and Kerry Burton, another employee, ridiculed his Chinese accent throughout his employment with Revcor.  Niu stated under oath that on February 20, 2002, he complained to Knight about the comments; however, Knight responded by telling him “to speak standard English” and “to not speak like a Negro.”  Further, Niu averred that Knight stated that “Kerry Burton was his right handed [sic] man and that [Niu] needed to treat him like [his] boss.”  

Niu also averred that subsequently, on March 18, 2002, he received a written warning for “combating his associates.”  Then again on May 23, 2002, Niu received two written warnings, one for comments made to a subordinate employee and one for unprofessional conduct during meetings.
(footnote: 1)  Niu stated in his affidavit that immediately after the reprimands on May 23, he again complained to Knight in the presence of Staci Coffman from human resources that Knight was treating him differently than other employees.  According to Niu, Knight and Coffman had no response to the allegation.
(footnote: 2)  Niu stated that his employment for Revcor was ultimately terminated on November 22, 2002. 

The trial court granted Revcor and Knight’s motion for summary judgment as to all causes of action.  In two points, Niu challenges the grant of summary judgment in favor of Revcor on his discrimination and retaliation causes of action.
(footnote: 3)  

III. 
Discussion

A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  In 
reviewing a summary judgment, we accept as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  

A defendant who conclusively negates as a matter of law at least one element of each of the plaintiff’s theories of recovery or pleads and proves as a matter of law each element of an affirmative defense is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004);
 Rhone-Poulenc, Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999).
  
Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).

B. 
Discrimination

In his first point, Niu contends that the trial court erred by granting summary judgment in favor of Revcor on his claim of intentional racial discrimination.  Niu argues that Revcor failed to establish as a matter of law a nondiscriminatory reason for his termination and that he thoroughly rebutted Revcor’s proffered nondiscriminatory reason. 

1. Applicable Law

Under Texas Labor Code section 21.051, an employer commits an unlawful employment practice if because of race, the employer “fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment.”  
Tex. Lab. Code Ann.
 § 21.051(1) (Vernon 2006)
.  The Texas Legislature modeled chapter 21 of the Texas Labor Code after federal law for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.  
Id.
 § 21.001(1); 
Herbert v. City of Forest Hill
, 189 S.W.3d 369, 374 (Tex. App.—Fort Worth 2006, no pet.);
 Shear Cuts, Inc. v. Littlejohn
, 141 S.W.3d 264, 269 (Tex. App.—Fort Worth 2004, no pet.).  Consequently, when reviewing an issue brought under chapter 21, we may look not only to cases involving the state statute, but also to cases interpreting the analogous federal provisions.  
Caballero v. Cent. Power & Light Co.
, 858 S.W.2d 359, 361 (Tex. 1993); 
Herbert
, 189 S.W.3d at 374-75;
 Shear Cuts, Inc.
, 141 S.W.3d at 269.

The United States Supreme Court has established a burden-shifting analysis in employment discrimination cases.  
See McDonnell Douglas Corp. v. Green
, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973);
 Wal-Mart Stores, Inc. v. Canchola
, 121 S.W.3d 735, 739 (Tex. 2003).  When an employer moves for a traditional summary judgment asserting a legitimate, nondiscriminatory reason for the employee’s termination, the employer must prove that legitimate, nondiscriminatory reason as a matter of law.  
M.D. Anderson Hosp. & Tumor Inst. v. Willrich
, 28 S.W.3d 22, 24 (Tex. 2000).  After the employer establishes a legitimate, nondiscriminatory reason, the burden then shifts to the employee, as in other traditional summary judgment cases, to raise a fact issue that the employer’s reasons were a pretext for discrimination.  
Id.
  Thus, the employee can defeat a traditional summary judgment motion by presenting evidence raising a fact issue on pretext or by challenging the defendant’s summary judgment evidence as failing to prove, as a matter of law, a legitimate, nondiscriminatory reason for the challenged employment action.  
Id.

2. Analysis

In its motion for summary judgment, Revcor asserted that Niu was terminated because his skills were geared toward preparing and developing new products, an area for which there was a bleak business forecast at the end of 2002 and for 2003.
(footnote: 4)  In support of its motion, Revcor offered Knight’s affidavit, in which he asserted,

Niu’s manufacturing engineering manager position was eliminated in November, 2002 because the lean manufacturing integration process had been completed, and the business forecast for 2003 was negative as far as new product development was concerned.  Part of Niu’s strength, in theoretical and injection molding, was geared toward the development and implementation of new product design and manufacture. 

In addition, Revcor offered Knight’s testimony, in which he again stated that Niu’s position was eliminated primarily because the lean manufacturing integration process was completed and because the outlook for new products was rather bleak.  Knight went on to explain,

[W]hen faced with that reality, you look at, okay, what staff do we have and what’s the best move for the company.  And when comparing [Niu] to the manufacturing engineers that reported to him, his -- his experience was mostly theory from an injection molding standpoint.  Their experience was more product related, application engineering.  So when you look at what work is going to be required in the future, their experience was best suited to address the work that we saw coming up. 

To raise a fact issue, Niu first asserted that a document entitled “Plant Shut Down Schedule,” addressing shut-down days and vacation days in the fourth quarter of 2002, undermined Revcor’s position.  However, the record on appeal does not contain an authenticated copy of the “Plant Shut Down Schedule” document.  Niu’s affidavit does not mention the document or attempt to authenticate it.  
Cf. Republic Nat’l Leasing Corp. v. Schindler
, 717 S.W.2d 606, 607 (Tex. 1986) (holding trial court correct in considering documents attached to properly prepared affidavit when affidavit stated attached documents were true and correct copies of originals).  Thus, it has no probative value to defeat the summary judgment.  
See 
Tex. R. Civ. P.
 166a(f); 
Medford v. Medford
, 68 S.W.3d 242, 247 (Tex. App.—Fort Worth 2002, no pet.) (“Unauthenticated or unsworn documents, or documents not supported by any affidavit, are not entitled to consideration as summary judgment evidence.”).

Second, Niu pointed to evidence that he claimed showed that Revcor was not still losing money in 2002 at the time he was terminated.
(footnote: 5)  But this evidence does not challenge Revcor’s primary contention that Niu’s position was eliminated because the lean manufacturing integration process was completed and because the outlook for new products was bleak.  
See Laxton v. Gap, Inc.
, 333 F.3d 572, 578 (5th
 Cir. 2003) (“The plaintiff must rebut each nondiscriminatory reason articulated by the employer.”); 
Clay v. Holy Cross Hosp.
, 253 F.3d 1000, 1007 (7th
 Cir. 2001); 
see also Kucera v. Humble ISD
, No. 14-03-01200-CV, 2004 WL 2161827, at *2 (Tex. App.—Houston [14th
 Dist.] Sept. 28, 2004, no pet.) (mem. op.)
.  To the contrary, Niu appears to agree that by November 2002 when he was terminated, the lean manufacturing integration process, which he led, was completed. 

Finally, Niu attempted to raise a fact issue by pointing to several racial comments.  Niu first pointed to his own deposition testimony, in which he stated that Knight ridiculed his accent at least fifty times during the twenty-month period when he worked for Revcor.  Niu also submitted evidence that Knight made racial comments or jokes to several other former Revcor employees.  Lastly, Niu pointed to the complaint he made to Knight about Kerry Burton’s comments, to which Knight responded that Niu needed “to learn to speak standard English,” “to not talk like a Negro,” and to respect Burton as a boss.  

In order for workplace comments to provide sufficient evidence of discrimination, those comments must be (1) related to the plaintiff’s protected class, (2) proximate in time to the adverse employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. 
 Krystek v. Univ. of S. Miss.
, 164 F.3d 251, 256 (5th
 Cir. 1999); 
Elgaghil v. Tarrant County Junior Coll.
, 45 S.W.3d 133, 140 (Tex. App.—Fort Worth 2000, pet. denied).  Assuming for summary judgment review that Knight actually made all of these remarks, the comments do not meet these criteria.  Most of the comments that Knight made to former Revcor employees other than Niu occurred prior to Niu’s employment at Revcor.  The specific comment that Niu alleged Knight made in response to his complaint was made eight months prior to Niu’s termination. 
 See Nash v. Blood & Tissue Ctr. of Cent. Tex.
, No. 03-03-00763-CV, 2004 WL 2900483, at *7 (Tex. App.—Austin Dec. 16, 2004, no pet.) (mem. op.) (comment made approximately five months prior to termination was not proximate in time to employment decision).  Furthermore, the evidence does not show that any of the comments were related in any way to Niu’s termination. 
 See Krystek
, 164 F.3d at 256
; 
Elgaghil
, 45 S.W.3d at 140; 
cf. Coastal Mart, Inc. v. Hernandez
, 76 S.W.3d 691, 696-97 (Tex. App.—Corpus Christi 2002, pet. dism’d by agr.) (holding remarks related to decision to terminate, and therefore sufficient to support verdict of gender discrimination, when comments regarded a woman’s preferable performance).

We hold that Revcor satisfied its burden to establish as a matter of law a legitimate, nondiscriminatory reason for terminating Niu.  
See 
Tex. R. Civ. P.
 166a(c); 
M.D. Anderson Hosp.
, 28 S.W.3d at 24.  
Furthermore, we hold that Niu  failed to raise a fact issue concerning pretext.  
See M.D. Anderson Hosp.
, 28 S.W.3d at 24.  Thus, the trial court did not err in granting summary judgment in favor of Revcor on Niu’s claim of intentional racial discrimination.  Because Revcor proved a legitimate, nondiscriminatory reason for terminating Niu, we need not consider Revcor’s argument challenging Niu’s prima facie discrimination case.  
See
 
Tex. R. App. P.
 47.1.  We overrule Niu’s first point.

C. Retaliation

In his second point, Niu contends that the trial court erred by granting the motion for summary judgment in favor of Revcor on his retaliation claim. 
 

1. Applicable Law

An employer commits an unlawful employment practice if it retaliates against a person who (1) opposes a discriminatory practice, (2) makes or files a charge, (3) files a complaint, or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.  
Tex. Lab. Code Ann.
 § 21.055 (Vernon 2006).
  
The elements of a retaliation claim are (1) the employee engaged in a protected activity, (2) the employer took action against the employee, and (3) a causal connection between the employee’s protected activity and the adverse employment decision.  
Id.
; 
Herbert
, 189 S.W.3d at 376; 
McCoy
 
v. Tex. Instruments, Inc.
, 183 S.W.3d 548, 555 (Tex. App.—Dallas 2006, no pet.).  A burden-shifting analysis, similar to the wrongful-discharge burden-shifting analysis, applies to retaliation claims.  
See Graves v. Komet
, 982 S.W.2d 551, 554 (Tex. App.—San Antonio 1998, no pet.).  And like a  wrongful-discharge claim, an employer is entitled to a traditional summary judgment motion on a retaliation claim if it proves as a matter of law a legitimate, nondiscriminatory purpose for the employment action.  
See Thomann v. Lakes Regional MHMR Ctr.,
 162 S.W.3d 788, 800 (Tex. App.—Dallas 2005, no pet.).  Once the employer establishes a legitimate nondiscriminatory reason for the action, the burden shifts to the employee to either (1) present evidence raising a fact issue on whether the reason given was a pretext for retaliatory action or (2) challenge the employer’s summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason.  
See
 
McCoy, 
183 S.W.3d at 556; 
Thomann
, 162 S.W.3d at 800.

2. Analysis

As previously discussed, Revcor asserted in its motion for summary judgment, supported by Knight’s affidavit and deposition, that Niu was terminated because his skills were geared toward preparing and developing new products, an area for which there was a bleak business forecast at the end of 2002 and for 2003.  To raise a fact issue, Niu “adopts and incorporates by reference” the argument he made in response to his first point. 

As previously explained, the record on appeal does not contain an authenticated copy of the “Plant Shut Down Schedule” document.  
Thus, it has no probative value to defeat the summary judgment.  
See 
Tex. R. Civ. P.
 166a(f); 
Medford
, 68 S.W.3d at 247.  Second, although Niu pointed to evidence that he claimed showed that Revcor was not still losing money in 2002 at the time he was terminated, the evidence does not challenge Revcor’s primary contention that Niu’s position was eliminated because the lean manufacturing integration process was completed and because the outlook for new products was bleak.  
See Laxton
, 333 F.3d at 578
; 
Clay
, 253 F.3d at 1007
; 
see also Kucera
, 2004 WL 2161827, at *2
.  Finally, Niu attempted to raise a fact issue by pointing to several racial comments made by Knight.   However, the evidence does not show that any of the comments were related in any way to Niu’s termination. 
 See Krystek
, 164 F.3d at 256
; 
Elgaghil
, 45 S.W.3d at 140.  And an employee’s subjective beliefs of retaliation are merely conclusions and do not raise a fact issue precluding summary judgment in a retaliatory discharge claim.  
Tex. Div.-Tranter, Inc. v. Carrozza
, 876 S.W.2d 312, 314 (Tex. 1994).

To the extent that Niu argues that reprimands Revcor issued to him will support a retaliation claim, we disagree.
(footnote: 6)  An adverse employment action short of discharge will support a claim for retaliation if a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  
Burlington N. & Santa Fe Ry. Co. v. White
, 
126 S. Ct. 2405, 2415 (2006) (holding reassignment of employee from forklift duty to standard track laborer tasks and thirty-seven day suspension without pay supported jury’s finding of retaliation).  An action must be “materially adverse” because it is important to separate significant from trivial harms.  
Id.
  The action is judged from the standpoint of a reasonable employee because the standard for judging harm must be objective.  
Id.  
The standard is general because the significance of any given act of retaliation will often depend upon the particular circumstances; “[c]ontext matters.”  
Id.

Revcor reprimanded Niu for “combating his associates”, making inappropriate comments to a subordinate employee, and conducting himself unprofessionally during meetings.  Revcor issued these reprimands after Niu told Knight that he was offended by Knight’s ridiculing Niu’s accent and six to eight months before Revcor terminated Niu. 

Niu presented no evidence that the reprimands were related to his termination.  And taken by themselves, the reprimands do  not rise to the level of adverse employment action.  When viewed objectively, they are not “materially adverse”; that is, we cannot say that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  
See id.
  We therefore hold that the reprimands cannot serve as a basis for Niu’s retaliation claim.

We hold that Revcor satisfied its burden to establish as a matter of law a legitimate, nondiscriminatory reason for terminating Niu.  
Furthermore, we hold that Niu has failed to raise a fact issue concerning whether Revcor’s legitimate nondiscriminatory reason was a pretext for retaliation. 
 Thus, the trial court did not err in granting summary judgment in favor of Revcor on Niu’s claim of retaliation.  We overrule Niu’s second point.

IV. 
Conclusion

Having overruled Niu’s two points, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED: October 12, 2006

FOOTNOTES
1:
Niu also averred that on March 16, 2002, Knight attempted to “write [him] up”; however, after he disputed the reprimand, Knight tore up the document.  

2:
According to Revcor’s and Knight’s summary judgment evidence, Revcor paid for Niu to attend a two-day seminar on communication, provided him with an executive coach, and gave him a book regarding effective communications styles in an effort to address complaints from employees concerning Niu’s management style. 

3:
Niu does not challenge the grant of summary judgment as to his intentional infliction of emotional distress or racial harassment causes of action.  Furthermore, Niu no longer contends that Knight should be held individually liable. 

4:
Niu contends in his brief that Revcor also asserted in its motion for summary judgment that the amount of Niu’s salary was a nondiscriminatory reason for his termination.  However, this does not appear to be so.  In its summary judgment motion, Revcor merely notes in a parenthetical that by eliminating Niu’s position, it saved over $100,000 in salary and fringe benefits. 

5:
Niu submitted his own affidavit, in which he averred, “Revcor went from an economic loss of 1.2 million dollars in 2001 to a net profit of $380,000.00  . . . after the expiration of the first eleven periods of 2002.”  Niu also pointed to Brigman’s affidavit, in which Brigman stated under oath that fifty employees were laid off due to financial losses in 2001, yet only five employees were laid off in 2002.  Finally, Niu submitted Revcor’s answers to interrogatories, in which Revcor stated that several of its salaried employees received a 6.26% bonus in 2002 based solely upon Haltom City operations. 

6:
It is not clear that Niu so argues.