

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EL PASO COUNTY WATER IMPROVEMENT DISTRICT NO. 1, | § | No. 08-21-00206-CV |
| | § | Appeal from the |
| Appellant, | | |
| | § | 243rd Judicial District Court |
| v. | | |
| | § | of El Paso County, Texas |
| ROGELIO TREVIZO, | | |
| | § | (TC# 2019DCV1164) |
| Appellee. | | |

## <u>SUBSTITUTED OPINION</u>

Appellant filed a motion for rehearing of this Court's January 27, 2023 opinion. After requesting Appellee's response, we grant the motion for rehearing, deny Appellant's motion to supplement the record as moot, and withdraw our prior opinion and judgment in this case. The following is now the opinion of the Court. *See* TEX. R. APP. P. 49.3.

El Paso County Water Improvement District No. 1 (the District) appeals the trial court's denial of its plea to the jurisdiction in Rogelio Trevizo's age-and disability-discrimination, retaliation, failure-to-accommodate, and hostile-work-environment suit. For the following reasons, we reverse and render judgment granting the District's plea to the jurisdiction and accordingly dismiss Trevizo's claims for want of jurisdiction.

## Factual and Procedural Background

The District is a political subdivision of the State of Texas that provides surface water from the Rio Grande River to water rights holders in El Paso County and assesses and collects taxes for those water rights. Trevizo worked for the District as an Equipment Operator from February 7, 2007, until his termination on October 8, 2018. As an Equipment Operator, Trevizo carried out a variety of manual work, including clearing brush, tree stumps, and rocks, as well as properly maintaining waterways, access roads, and associated structures. He also operated heavy equipment, including dump trucks, loaders, water trucks, and backhoes. His position involved working outside in extreme weather conditions.

On December 27, 2016, while the District was closed for holiday break, Trevizo was admitted to the hospital for numbness in his right leg. On January 8, 2017, Trevizo notified Lisa Aguilar, the District's human resources manager, that he would be unable to return to work following the holiday break due to a blood clot in his foot. Aguilar requested he provide a doctor's note, and on January 18, Trevizo provided a doctor's note stating he had been seen by his doctor on January 16, was excused from work for one day, and could return to work on January 17. However, the note did not list any of Trevizo's diagnoses or describe the nature of his medical condition.

Because Trevizo did not return to work on January 17, Aguilar sent him paperwork informing him he would be placed on leave under the Family Medical Leave Act. Trevizo returned the requisite health care provider's certification paperwork, which indicated he was being treated for pain in his "right lower extremity," and the probable duration of the condition was six months to one year. The paperwork also stated Trevizo should "limit excessive walking due to leg pain," and the condition would cause episodic flare ups as well as follow-up treatments.

2

On February 24, Trevizo provided a doctor's note stating he could return to work as of February 22 on "light duty." The District requested more specific information about any work restrictions, and on February 27, Trevizo returned a new doctor's note stating he could "return to regular duties with the exception of driving." Trevizo resumed performing all other functions of his job except for driving.

Trevizo alleges on February 27—the day he returned to work following his medical leave—his manager, Jesus Reyes, told him "that [he] needed to fix his attitude or find another job." Trevizo also claims Reyes said "at [his] age it would be difficult for [him] to find another job." He responded by filing a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division and Equal Employment Opportunity Commission on March 3 for disability discrimination and retaliation. The EEOC issued its dismissal of the Charge and informed Trevizo of his right to sue on March 20.

On August 7, Trevizo provided another doctor's note to the District which released him to work with no restrictions, and he resumed driving heavy equipment as part of his job duties. Following his return to full duty, Trevizo claims he "was required to regularly perform harder work such as cement work, burning weeds, cutting trees, and fixing gates." He also alleges younger employees were allowed to work two additional days to earn compensatory time for the upcoming holiday season while he was allowed to work only one. On December 5, he responded by filing another Charge of Discrimination for age and disability discrimination, retaliation, failure to accommodate, hostile work environment, and harassment. In this Charge, Trevizo also stated he was "constantly being called in to the office for counseling regarding his attitude," which he characterized as retaliation for the complaints he made about management. On July 30, 2018, the

3

EEOC issued Trevizo notice of his right to sue and informed him it was terminating its processing of the Charge.

Trevizo alleges that throughout 2018, the District regularly required him to drive the older work vehicles without functioning windows or air conditioners and with "various safety issues," which he states he brought to the District's attention. On October 4, 2018, Trevizo's supervisor, Pete Rodriguez, informed Trevizo he would be using an older dump truck because another District employee needed to use the new truck (to which Trevizo had originally been assigned) to get his Commercial Driver's License. Trevizo protested, claiming the older truck had unspecified safety issues, no functioning air conditioning, and got too hot. Rodriguez told him the job had to be done, so he could either drive the older truck or go home. Trevizo went home.

When Trevizo returned to work on October 8, the District terminated his employment for insubordination. At his termination meeting, Trevizo told the District employees for the first time the purported safety issue with the older truck related specifically to its brakes and reiterated the truck was hot because it did not have air conditioning. Trevizo also gave the District a notarized statement he wrote after he left work on October 4, stating that he "insisted that for safety issues the A/C needed to be repaired," and "the temperatures are extremely high" and "caus[e] a heat stroke." Trevizo's statement also noted he had "been having issues with [his] health and [] told [his] supervisor about this"; however, Rodriguez told him it was his choice to drive the truck or go home, which he states he did for his own safety. When asked at his deposition why he made the notarized statement after leaving work on October 4, Trevizo stated he did so because he was concerned there would be a repercussion for his refusal to drive the truck.

After his termination, Trevizo filed a third Charge of Discrimination on October 11, claiming age and disability discrimination, retaliation, failure to accommodate, hostile work

4

environment, and harassment. The EEOC issued its dismissal and right to sue notice on March 22, 2019, and Trevizo filed this lawsuit shortly after. He alleges the District discriminated against him in violation of Chapter 21 of the Texas Labor Code (Chapter 21). Specifically, he alleges the District discriminated against him on the basis of his age[1] and disability,[2] denied him a reasonable accommodation, and retaliated against him, resulting in a hostile work environment. The District filed a combined plea to the jurisdiction and motion for summary judgment based on sovereign immunity, which the trial court denied without explanation in a brief order. The District appealed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (permitting interlocutory appeals from a trial court's decision on a governmental unit's plea to the jurisdiction).

### *Standard of Review and Applicable Law*

Governmental units, like the District, enjoy sovereign immunity from lawsuits except where the Legislature waives immunity. *Flores v. Tex. Dep't of Criminal Justice*, 634 S.W.3d 440, 450 (Tex. App.—El Paso 2021, no pet.) (citing *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011)). Sovereign immunity deprives a trial court of subject matter jurisdiction. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). The Legislature has provided a limited waiver of immunity for claims brought against governmental units under Chapter 21. *Id.* However, the waiver extends only to suits in which the pleadings state a prima facie claim for an actual violation. *Tex. Dep't of Criminal Justice v. Flores*, 555 S.W.3d 656, 661 (Tex. App.—El Paso 2018, no pet.) (citing *Garcia*, 372 S.W.3d at 636). If the plaintiff

---

[1] Trevizo is over the age of forty.

[2] Trevizo alleges he suffers from "atrial fibrillation (irregular heartbeat), essential hypertension (high blood pressure), peripheral arterial disease (narrowing of the arteries in the limbs), occlusion (blockage or closing of a blood vessel or organ), and Type II diabetes."

fails to state a prima facie case, the governmental unit retains its immunity from suit. *Id.* (citing *Garcia*, 372 S.W.3d at 636).

A defendant may challenge subject matter jurisdiction through a plea to the jurisdiction. *Flores*, 634 S.W.3d at 450 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225– 26 (Tex. 2004)). The plea can attack both the pleaded facts as well as the existence of jurisdictional facts by attaching evidence to the plea. *Id.* (citing *Miranda*, 133 S.W.3d at 226–27). We construe the pleadings liberally in favor of the plaintiff. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009) (citation omitted). When there is no question of fact as to the jurisdictional issue, the trial court rules on the plea as a matter of law. *Flores*, 634 S.W.3d at 450 (citing *Heinrich*, 284 S.W.3d at 378). However, when the defendant challenges the existence of jurisdictional facts, the court must move beyond the pleadings and consider the evidence. *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (citing *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). The court can consider evidence necessary to resolve any dispute over those facts, even if the evidence implicates both the court's subject matter jurisdiction and the merits of the case. *Garcia*, 372 S.W.3d at 635.

Because this standard mirrors that of summary judgments, the plaintiff must raise at least a genuine issue of material fact to avoid dismissal if his factual allegations are challenged with supporting evidence necessary to the consideration of the plea to the jurisdiction. *Clark*, 544 S.W.3d at 771. In determining whether a material fact issue exists, we take as true all evidence favorable to the plaintiff, indulge every reasonable inference and resolve any doubts in his favor. *Heinrich*, 284 S.W.3d at 378 (citing *Miranda*, 133 S.W.3d at 228).

We review a trial court's denial of a plea to the jurisdiction de novo. *Miranda*, 133 S.W.3d at 226.

*Analysis*

In five issues, the District argues the trial court should have granted its plea to the jurisdiction as to each of Trevizo's claims.

## A. Discrimination Claims

Trevizo claims the District terminated his employment because of his age and disability. Chapter 21 prevents an employer from discriminating against or discharging an employee based on "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE ANN. § 21.051. In adopting this statute, the Legislature "intended to correlate state law with federal law in employment discrimination cases"; accordingly, we look to federal law to interpret its provisions. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (citations omitted).

Trevizo may rely on either direct or circumstantial evidence to establish a prima facie case of unlawful discrimination; however, "direct evidence of discriminatory intent is typically 'hard to come by[.]'" *Tex. Tech Univ. Health Scis. Ctr. El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) (quoting *Garcia*, 372 S.W.3d at 634). If he relies on circumstantial evidence to establish his discrimination claim, we follow the burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under the *McDonnell Douglas* framework: (1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case; (2) the defendant must then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the adverse employment action; and (3) the plaintiff must then overcome the rebuttal evidence by establishing the defendant's stated reason is a mere pretext. *Id.*[3]

---

[3] The *McDonnell Douglas* burden-shifting analysis applies to employment-discrimination cases that have not been fully tried on the merits, such as Trevizo's case. *Hagood v. Cnty. of El Paso*, 408 S.W.3d 515, 523 (Tex. App.—El Paso 2013, no pet.). At times in his briefing, Trevizo refers to a "reasonable juror" standard of review. However, this

### i. Age Discrimination

To establish a prima facie case of age discrimination, Trevizo must show he was: (1) at least forty years old, *see* TEX. LAB. CODE ANN. § 21.101; (2) qualified for his employment position; (3) terminated by the District; and (4) was treated less favorably than similarly situated members outside the protected class. *Flores*, 612 S.W.3d at 305. The District does not dispute Trevizo has established the first three elements, so we address only the fourth.

"Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 584 (Tex. 2017) (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam)). To meet the similarly situated requirement, the plaintiff must show the circumstances surrounding the compared employees are "nearly identical," including the situations and conduct of the employees in question. *Id.*; *see also Apache Corp. v. Davis*, 627 S.W.3d 324, 339 (Tex. 2021) ("[E]vidence of disparate treatment of other employees' conduct requires that the employees' circumstances be 'comparable in all material respects.'" (internal quotation omitted)). "Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *Reyes*, 272 S.W.3d at 594.

Trevizo claims his below allegations establish his prima facie age-discrimination claim:

- In July 2015, he and Justin Otten, a younger co-worker, committed the same infraction, but he was disciplined, and Otten was not. Otten was also not terminated despite being involved in three accidents at work.

---

standard—*i.e.*, whether evidence is legally sufficient to support a jury's finding—applies to cases tried on the merits. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136 (Tex. 2015). Again, because Trevizo's case has not been tried on the merits, we consider the trial court's jurisdiction by first inquiring whether Trevizo met his burden of establishing a prima facie case as to each claim, and if he has, then applying the *McDonnell Douglas* burden-shifting analysis. *Id.* at 135–36.

- In May 2016, his tires were punctured by a pitchfork while parked in the District's fenced facility.

- After he returned to work in February 2017 following his medical leave, his supervisor, Jesus Reyes, told him "that [he] needed to fix his attitude or find another job" and "at [his] age it would be difficult for [him] to find another job."

- Younger employees[4] were allowed to work both a Friday (11/3/2017) and a Saturday (11/4/2017) to earn additional compensatory time, while he was allowed to work only the Saturday.

- Throughout 2018, he was required to drive older work vehicles and equipment without functioning windows, air conditioning, and other various safety issues. The District provided younger employees[5] with newer maintenance vehicles and equipment, despite Trevizo's complaints that the older vehicles were unsafe and affected his medical conditions.

The District maintains Trevizo has not established the similarly situated element required of a prima facie age-discrimination claim because he has neither pled nor established through evidence any similarly situated younger employee engaged in the same misconduct but was treated more favorably than Trevizo—in other words, Trevizo does not claim younger employees refused to drive trucks without air conditioning or engaged in nearly identical or comparably serious misconduct and were not subsequently discharged. We agree.

As to direct evidence of alleged age discrimination, Reyes's comments are not direct evidence of discriminatory intent and are instead "stray remarks" with no evidentiary value. Statements made remotely in time by someone not connected with an age-discrimination claimant's termination decision do not raise a fact issue about the reason for the termination and are insufficient to establish evidence of discrimination. *Id.* at 592. Statements or remarks may serve as evidence of discrimination only if they are: (1) related to the employee's protected class; (2)

---

[4] Trevizo does not identify any younger co-workers as to this allegation.

[5] Trevizo identifies these younger employees as "Adrian Angiano, David and Alonzo."

temporally close to the adverse employment decision; (3) made by an individual with authority over the employment decision; and (4) related to the employment decision at issue. *Id.* at 593 (citing *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608 (5th Cir. 2007)). "To be sure, specific expressions of negativity or animosity about a person's age or other protected status can constitute direct evidence to support a claim of illegal discrimination." *Flores*, 612 S.W.3d at 313 (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004)). However, such comments can constitute direct evidence of discriminatory intent generally only if they are "not stray" but instead tied to the adverse employment action at issue in terms of both when and by whom they were made. *Id.* (citing *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015)).

Here, Reyes's comments related to Trevizo's age; however, they do not constitute competent direct evidence to support his claim of age discrimination because Reyes was not involved in the decision to terminate Trevizo's employment. *See Reyes*, 272 S.W.3d at 593; *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 481 (Tex. App.—El Paso 2013, pet. denied). Additionally, Reyes's comments preceded Trevizo's termination by eighteen months and did not relate to the employment decision at issue (*i.e.*, his termination for insubordination) but were instead related to his attitude. *See Lopez v. Exxon Mobil Dev. Co.*, No. 14-16-00826-CV, 2017 WL 4018359, at *9 (Tex. App.—Houston [14th Dist.] Sept. 12, 2017, pet. denied) (mem. op.) (concluding the same); *see also Dallas Indep. Sch. Dist. v. Allen*, No. 05-16-00537-CV, 2016 WL 7405781, at *7 (Tex. App.—Dallas Dec. 22, 2016, pet. denied) (mem. op.) (finding comment made approximately five months before employment decision too isolated to constitute direct evidence); *Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 730 (Tex. App.—Fort Worth 2006, no pet.)

(concluding comment made eight months prior to termination not proximate in time and unrelated to employment decision). Thus, Reyes's comments are stray remarks as a matter of law.

As to circumstantial evidence of alleged age discrimination, Trevizo identifies three instances in the above allegations in which he contends he was treated less favorably than co-workers under the age of forty: (1) he and Otten committed the same unspecified infraction, but he was disciplined and Otten was not; (2) unspecified younger employees were permitted to work two days to earn compensatory time, while he was allowed to work only one; and (3) he was required to drive older vehicles without air conditioning, but younger employees, including "Adrian Angiano, David, and Alonzo" were provided newer air-conditioned vehicles.

However, none of the three instances described above involve the same conduct that led to Trevizo's termination—refusing to drive trucks without air conditioning or conduct of comparable seriousness. *Monarrez*, 177 S.W.3d at 917–18. Because Trevizo alleges his termination is the adverse employment action in his age-discrimination claim, relevant circumstantial evidence of alleged age discrimination must involve similarly situated employees under forty who engaged in the same or nearly identical conduct or comparably serious conduct but were not subsequently terminated. *Id.* In other words, the three instances Trevizo points to as circumstantial evidence of age discrimination are irrelevant to this claim because none involve the conduct that led to his termination.

Further, Trevizo did not present any evidence showing that the circumstances under which Otten, Angiano, David, Alonzo, or the other unspecified younger employees were "comparable in all material respects." *Rincones*, 520 S.W.3d at 584. He neither pled nor provided evidence of their roles, responsibilities, managers, or job performance. *See Reyes*, 272 S.W.3d at 594 ("Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary

11

records are not considered to be 'nearly identical.'"). Indeed, Trevizo has not alleged any other circumstances surrounding any comparable person, including an allegation of each person's position. *Cf. Rincones*, 520 S.W.3d at 585 (discussing allegations of employees outside the protected class in which plaintiff alleged each person's position). While the precise elements of a prima facie showing under the *McDonnell Douglas* framework vary depending on the circumstances, to prevail here, Trevizo could not rely merely on evidence he was otherwise discharged because of his age but instead had to provide comparative evidence he was treated less favorably than those who did not fit within the protected class. *Flores*, 612 S.W.3d at 311; *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Valdizan-Garcia*, No. 01-12-00386-CV, 2012 WL 5545783, at *5 (Tex. App.—Houston [1st Dist.] Nov. 15, 2012, no pet.) (mem. op.) ("Under *McDonnell Douglas* [plaintiff] cannot establish a prima facie case of discrimination without evidence, or even an allegation, that younger nurses were disciplined differently for deficient patient care [*i.e.*, the adverse employment action at issue]."). Absent evidence Trevizo was treated less favorably than other similarly situated employees under forty who engaged in the same or nearly identical conduct or comparably serious conduct but were treated more favorably—*i.e.*, not terminated—he has not met the fourth element of his prima facie age-discrimination claim as a matter of law.

Finally, Trevizo's remaining allegation—that his tires were punctured by a pitchfork while parked in the District's fenced facility—provides no circumstantial evidence of age discrimination because Trevizo fails to allege he was treated less favorably than any other employee, let alone a similarly situated member outside the protected class. *Flores*, 612 S.W.3d at 305.

Because Trevizo has failed to establish a prima facie case of age discrimination, our analysis ends there. The trial court erred by denying the District's plea to the jurisdiction as to

Trevizo's age-discrimination claim. We reverse and render judgment dismissing this claim against the District.

### ii. Disability Discrimination

To establish a prima facie disability-discrimination claim, Trevizo must show: (1) he has a disability; (2) he was qualified for his job; and (3) he suffered an adverse employment decision—here, that his employment was terminated—because of his disability. *Lara*, 625 S.W.3d at 61. The District contends Trevizo failed to prove he was disabled at the time of his termination and that even if he were, he has not shown a causal connection between the disability and his termination.[6]

Chapter 21 defines a disability as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX. LAB. CODE ANN. § 21.002(6). A disability can also be episodic if it substantially limits a major life activity when active. *Id.* § 21.0021(a)(2). A disability-discrimination claim does not require the employee to be symptomatic at the time of the adverse employment action. *Flores*, 555 S.W.3d at 665. Courts interpret a "major life activity" to mean "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Vasquez*, 508 S.W.3d at 639 (quoting *Union Carbide Corp. v. Mayfield*, 66 S.W.3d 354, 360 (Tex. App.—Corpus Christi 2001, pet. denied)). In determining whether a person has a disability that substantially limits a major life activity, we consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or expected permanent or long-term impact resulting from the impairment. *Id.* Both federal and state law direct this is not meant to be a demanding standard. *See* 29 C.F.R. § 1630.2(i)(2) ("In

---

[6] The District does not challenge whether Trevizo was qualified for his job.

13

determining other examples of major life activities, the term 'major' shall not be interpreted strictly to create a demanding standard for disability."); *id.* § 1630.2(j)(1)(i) ("The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard."); *id.* § 1630.2(j)(1)(iii) ("[T]he threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis."); TEX. LAB. CODE ANN. § 21.0021(a)(1) ("The term 'disability' [] shall be construed in favor of broad coverage of individuals under Subchapters B and C, to the maximum extent allowed under those subchapters[.]").

In his amended petition, Trevizo alleges he suffers from "atrial fibrillation (irregular heartbeat), essential hypertension (high blood pressure), peripheral arterial disease (narrowing of the arteries in the limbs), occlusion (blockage or closing of a blood vessel or organ), and Type II diabetes." He also provided medical records to substantiate those diagnoses, as well as corresponding prescribed medications.[7] Given the standard of review, in which we indulge every reasonable inference and resolve any doubts in Trevizo's favor, as well as the applicable anti-discrimination laws described above, we conclude Trevizo has established the first element of his disability-discrimination claim—*i.e.*, he has a disability.

The District contends our decision in *Vasquez* compels otherwise. 508 S.W.3d at 629. In *Vasquez*, the plaintiff suffered a heart attack and subsequently contracted tuberculosis while in the hospital. *Id.* After recovering from both, she returned to work, where she was placed in a less

---

[7] Trevizo's medical records indicate he had been prescribed Metformin, a medication used to treat type 2 diabetes. *See Cloutier v. GoJet Airlines, LLC*, 311 F. Supp. 3d 928, 938 (N.D. Ill. 2018) (concluding evidence plaintiff was diagnosed with diabetes and prescribed Metformin sufficient to create a fact issue as to whether plaintiff's diabetes substantially limited his endocrine function to constitute a disability under the ADA); *Dillard v. SNC-Lavalin Eng'rs & Constructors Inc.*, 629 S.W.3d 692, 700 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("The quality and quantity of evidence required to raise a fact issue as to whether diabetes substantially limits endocrine function is minimal.").

desirable job allegedly because of stigma associated with her tuberculosis infection. *Id.* at 629–30. Though the District contends Trevizo, like the *Vasquez* plaintiff, had been released to full duty well before his termination date, that alone does not establish Trevizo did not have a disability. Indeed, the key distinction between Trevizo's and Vasquez's pleadings is the allegation of a disability. We held Vasquez's discrimination claim failed because her pleadings stated she "was not actually disabled at the time" of her discharge, nor was there any evidence to establish her condition was episodic or in remission. *Id.* at 639. In contrast, Trevizo pled he has a disability, specifically listed his diagnosed conditions, and provided evidence supporting his allegations and the fact he had these diagnoses at the time of his termination. Therefore, Trevizo's case is distinguishable from *Vasquez*—at least on the question of whether he has established a prima facie case of disability discrimination as to the disability requirement.

Having concluded Trevizo has sufficiently pled the first element, we next must consider whether his pleadings establish the third element—whether he was terminated *because of* his disability. Trevizo makes the following contentions in support of the third element of his disability-discrimination claim:

- He left work due to his refusal to drive a truck without air conditioning based in part on his health conditions, then was discharged for insubordination.

- Instead of following a progressive discipline process, the District discharged Trevizo for insubordination, even after he reported the condition of the older truck would be unsafe for his health conditions.

- He received verbal counseling after his return from medical leave and claims he was the only employee called insubordinate after complaining about vehicles' safety issues.

- Before he went on medical leave, he received annual performance reviews in 2012, 2013, and 2014 of either meets or exceeds expectations.

15

He maintains the evidence is sufficient to give rise to a material fact question as to whether he was terminated because of his disability.

However, even taking as true all evidence favorable to Trevizo, indulging every reasonable inference, and resolving any doubts in his favor, we disagree because Trevizo has not offered any causal nexus between his disability and the District's decision to terminate his employment—namely because the District had no knowledge of his disability when he was discharged. The record reflects the District's knowledge of Trevizo's medical conditions were limited to the following:

- In late 2016 and early 2017, Trevizo had pain in his "right lower extremity," for which he was placed on medical leave. The probable duration of the condition was listed as six months to one year. Though the condition could cause episodic flare-ups, his impacted job functions due to this condition during a flare-up were to "limit excessive walking due to leg pain," and he could need to miss work "for doctor's appointments or hospitalizations."

- After Trevizo returned to work following his medical leave, he had the restriction of no driving through August 2018.

- After August 2018, he was released to work with no restrictions.

In other words, Trevizo offered no evidence of the fact that the District knew about his disability at the time of his discharge—again, as alleged, "atrial fibrillation (irregular heartbeat), essential hypertension (high blood pressure), peripheral arterial disease (narrowing of the arteries in the limbs), occlusion (blockage or closing of a blood vessel or organ), and Type II diabetes." Trevizo claims he made the District aware of his medical conditions, stating in his response to the District's plea that he "consistently notified [the District] that the vehicles and equipment he was required to use were unsafe and detrimental to his health." However, besides his own affidavit, the only evidence he cites to in support of this assertion is copies of inspection checklists and a loss report in which he notes certain trucks do not have air conditioning but makes no reference to his

16

health. No record evidence suffices to create a material fact issue as to whether—after Trevizo was released to full duty and leading up to his discharge—he informed the District about his medical conditions or that operating a vehicle without air conditioning was detrimental to his health. *See Malouf v. Texas ex rels. Ellis*, No. 08-20-00235-CV, 2022 WL 8079246, at *7 (Tex. App.—El Paso Oct. 14, 2022, pet. filed) (finding "[s]elf-serving, speculative and conclusory statements of fact or law [] insufficient to raise an issue of fact" in deposition and affidavit testimony).

Though Trevizo substantiates his diagnoses with medical documentation in the record, it is undisputed these records were not provided to the District during his employment. The doctor's notes and medical leave certification paperwork Trevizo provided to the District provide no indication Trevizo suffers or ever suffered from "atrial fibrillation (irregular heartbeat), essential hypertension (high blood pressure), peripheral arterial disease (narrowing of the arteries in the limbs), occlusion (blockage or closing of a blood vessel or organ), and Type II diabetes."

Therefore, Trevizo's own unsubstantiated statements, without more, that his above allegations prove the District discriminated against him do not support the conclusion that the District terminated his employment *because of* his disability. An employee's subjective belief of discrimination or retaliation, without more, is insufficient to support the causal connection in an employment discrimination case. *Tex. Dep't of Motor Vehicles v. Bustillos*, 630 S.W.3d 316, 333 (Tex. App.—El Paso 2021, no pet.). Trevizo cannot establish a prima facie case of disability discrimination based upon "a mere showing of 'subjective beliefs' of discrimination[.]" *Chandra v. Tex. Tech Univ. Health Scis. Ctr.*, No. 08-99-00086-CV, 2000 WL 965048, at *3 (Tex. App.—El Paso July 13, 2000, no pet.) (not designated for publication) (internal quotation omitted); *see also Carter v. Hegar*, No. 03-16-00706-CV, 2018 WL 2375815, at *3 (Tex. App.—Austin May 25, 2018, no pet.) (mem. op.) (concluding plaintiff had not raised fact issue as to whether she was

17

not hired for position because of her disability when she offered evidence of past positive performance reviews, had to take disability-related leave during her prior employment with defendant, and presented evidence showing hiring panel members knew of her disability and leave history). Accordingly, Trevizo has not met the third element of a disability-discrimination claim.

Despite supporting his challenge to the District's plea to the jurisdiction with evidence, Trevizo has not raised a material fact issue to overcome the District's challenge to the trial court's subject-matter jurisdiction. The trial court therefore erred by denying the District's plea to the jurisdiction as to this claim. We reverse and render judgment dismissing this claim against the District.

## B. Reasonable-Accommodation Claim

Trevizo also claims the District denied him a reasonable accommodation. The elements of a reasonable-accommodation claim partially overlap with the elements of a disability-discrimination claim. *Hagood*, 408 S.W.3d at 524. To establish a prima facie case of failure to accommodate, Trevizo must show: (1) he had a disability; (2) the District had notice of his disability; (3) with "reasonable accommodations," he could perform the "essential functions" of his position; and (4) the District refused to make such accommodations. *Id.*

"An employer cannot be liable for failing to reasonably accommodate an employee's disability unless it knew of the disability." *Dillard*, 629 S.W.3d at 704; *see also Tullos v. City of Nassau Bay*, 137 F. App'x 638, 646 (5th Cir. 2005) ("[A]n employer cannot be liable for terminating an employee on the basis of behavior that is caused by a disability if the employer is not told of the disability[.]"). If an employee's need for a disability-related accommodation is not obvious, the employee must timely notify his employer of the disability and give his employer an opportunity to reasonably accommodate it. *Id.* The employee is responsible for initiating the

18

reasonable-accommodation discussion because he and his physician are best situated to understand the accommodations that will assist him in performing his job. *Aldine Indep. Sch. Dist. v. Massey*, No. 01-17-00688-CV, 2018 WL 3117831, at \*4 (Tex. App.—Houston [1st Dist.] June 26, 2018, no pet.) (mem. op.) (citing *Jurach v. Safety Vision, LLC*, 72 F. Supp. 3d 698, 709 (S.D. Tex. 2014)). However, if an employee requests an accommodation for the first time only after it has become clear an adverse employment action is imminent, the notice of disability is untimely. *Dillard*, 629 S.W.3d at 704; *see also Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012) ("When an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be 'too little, too late.'") (citing cases finding the same).

The District contends Trevizo has not established he was disabled at the time of his discharge or that even if he was, the District had notice of his disability. Trevizo alleges he requested an accommodation three different times: (1) in the form of leave from January 11 through February 27, 2017; (2) in the form of restricted duty following his return from medical leave and through his release to full duty in August 2017;[8] and (3) on October 4, 2018, when he told his supervisor he could not drive the truck without air conditioning. Because it is undisputed the District approved both Trevizo's medical leave and restricted duty request, only the third alleged request for accommodation is relevant here.

---

[8] Trevizo also claims his release from restricted duty in August 2017 constituted a "new request for an accommodation related to the same heart conditions that had plagued [him] since December 2016." However, he neither alleges nor points to evidence sufficient to create a fact issue that he notified the District his release to full duty created the need for an accommodation. *See Dillard*, 629 S.W.3d at 704 ("[E]ven when an employer is generally aware of a disability, it may be unable to anticipate all the issues that the disability may create on the job and spontaneously accommodate them.").

However, as discussed above, while we conclude Trevizo established he had a disability, there is no evidence the District had notice of it. An employee's request for a reasonable accommodation need not be formal, in writing, mention discrimination laws, or use the words "reasonable accommodation." *Lara*, 625 S.W.3d at 53. But the request must be clear enough to let the employer know the employee is requesting an adjustment or change at work for a reason related to a medical condition. *Id.* (discussing the EEOC guidance document on the interpretation of federal discrimination laws). Trevizo says he told the District he was "tired of sweating" and "getting dizzy" when he refused to drive the truck on October 4. Yet those statements were insufficient as a matter of law to constitute a request for a reasonable accommodation because they did not link Trevizo's request for an adjustment or change at work to a medical condition.[9]

Indeed, even assuming the notarized statement of facts Trevizo gave to the District immediately preceding his termination constituted a request for accommodation, his request was not timely because it came only after it was clear an adverse employment action was imminent. *See Jones*, 696 F.3d 78, 90. As Trevizo stated, he wrote the statement and had it notarized after leaving work on October 4 because he was concerned there would be a repercussion for his refusal to drive the truck.

---

[9] For example, the EEOC guidance document lists several examples of what a request for a reasonable accommodation might look like. U.S. Equal Employment Opportunity Commission, EEOC-CVG-2003-1, Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA (2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#requesting. Example D provides an example of a statement insufficient to place an employer on notice and resembles Trevizo's purported request:

> "An employee tells his supervisor that he would like a new chair because his present one is uncomfortable. Although this is a request for a change at work, his statement is insufficient to put the employer on notice that he is requesting reasonable accommodation. He does not link his need for the new chair with a medical condition." *Id.*

Having determined the District did not have notice of Trevizo's disability, we conclude Trevizo failed to establish the second element of a prima facie reasonable-accommodation claim. The trial court erred by denying the District's plea to the jurisdiction as to this claim. We reverse and render judgment dismissing this claim against the District.

## C. Retaliation Claim

Trevizo also claims the District retaliated against him. As a companion to its anti-discrimination provisions, Chapter 21 prohibits retaliation against an employee for engaging in certain protected activities, like filing a charge of employment discrimination. *Clark*, 544 S.W.3d at 781 (citing TEX. LAB. CODE ANN. § 21.055). A retaliation claim may be actionable even if the underlying discrimination claim is not. *Id.* To establish a prima facie case of retaliation, Trevizo must show: (1) he engaged in protected activity; (2) he experienced an adverse employment action; and (3) there was a causal link between the two. *Id.* at 782.

Chapter 21 does not protect employees from all retaliatory employment action, only from actions that are "materially adverse," meaning an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 788 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006)). The causal-link requirement may be "easily satisfied" with a showing of close temporal proximity between the protected activity and adverse employment action; however, close temporal proximity is not dispositive of whether the employer retaliated. *Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, No. 08-20-00202-CV, 2022 WL 3755789, at *8 (Tex. App.—El Paso Aug. 30, 2022, pet. filed) (citations omitted). An employee can also establish the causal-link requirement by circumstantial evidence showing the employer's decision was based in part on knowledge of the employee's protected activity or the

protected activity and adverse employment action were "not wholly unrelated." *Id.* (quoting *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001)).

Trevizo claims he engaged in a protected activity in three different manners: (1) by filing his March 3, 2017, Charge of Discrimination with the EEOC; (2) by filing his December 5, 2017, Charge of Discrimination with the EEOC; and (3) by requesting reasonable accommodations "on multiple separate occasions," including October 4, 2018.

As to Trevizo's first two allegations of protected activity, the District contends he cannot establish the causal-link requirement because the time period between each filing and his termination is legally insufficient to support a claim of retaliation; the District terminated Trevizo's employment ten months after he filed the December 2017 Charge and eighteen months after he filed the March 2017 Charge. Further, the District maintains without any other circumstantial evidence establishing a causal link between Trevizo's discrimination charges and his discharge, he cannot meet his burden to plead a prima facie retaliation claim.

Ample caselaw supports the District's position that a ten-month (and thus an eighteen-month) gap between an employee's protected activity and adverse employment action is, without more, insufficient to establish the causal-link requirement. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–71 (5th Cir. 2002) (finding a five-month gap between protected activity and adverse employment action insufficient to establish causal link); *Clark*, 544 S.W.3d at 790 (finding an eight-month gap between an EEOC charge and termination to be "so long as to be of little, if any, probative value"); *Cnty. of El Paso v. Aguilar*, 600 S.W.3d 62, 92–93 (Tex. App.—El Paso 2020, no pet.) (finding seven-month gap between protected activity and constructive discharge, without more, insufficient to give rise to inference of causation).

However, Trevizo argues his termination was not the only retaliatory conduct the District carried out against him. He contends the fact that he was required to use older vehicles and equipment without air conditioning constitutes further evidence of retaliation sufficient to establish the causal link from the time he filed his discrimination charges through his termination.[10] But while Trevizo's termination unquestionably constitutes an adverse employment action, this other purported harm does not; it is not the type of materially adverse action that would deter an employee from making a discrimination complaint. *See, e.g.*, *Clark*, 544 S.W.3d at 789 (listing examples of conduct courts have found not to constitute materially adverse employment action); *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 443 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (finding no adverse employment action when plaintiff presented no evidence transfer affected his job title, grade, salary, or benefits). In sum, Trevizo has not established the causal-link requirement of a prima facie retaliation claim as to his filing of the two employment-discrimination charges.

As to Trevizo's last allegation of protected activity, the District contends he cannot establish the protected activity requirement because his purported requests for accommodation are not protected activity sufficient to invoke the antiretaliation provisions of Chapter 21. We agree. In *Lara*, the Texas Supreme Court held that to trigger the protections of Chapter 21, "the conduct relied on by the employee 'must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue.'" 625 S.W.3d at 59 (quoting *Clark*, 544 S.W.3d at

---

[10] Trevizo also contends the District failed to follow its progressive disciplinary policy when it terminated his employment, rather than issuing a warning, and this departure from its policy also constitutes circumstantial evidence of causation. However, the record includes a copy of the District's corrective action policy, which states "[d]epending on the facts and circumstances involved in each situation, management may choose to begin corrective action at any step, up to and including . . . separation and may skip any step, depending on the circumstances." Trevizo presented no other evidence to show this was not in fact the District's policy. Thus, no evidence supports Trevizo's contention the District had a progressive disciplinary policy that it failed to follow in his discharge.

23

786). Thus, to invoke the antiretaliation protection of Chapter 21, at least one of Trevizo's accommodation requests must have alerted the District to Trevizo's belief that discrimination was at issue. *Id.* at 60. Because there is no evidence Trevizo opposed any discriminatory practice in his various requests (even including his requests on October 4 and 8, which we concluded above do not constitute requests for reasonable accommodations), he cannot make a prima facie case of retaliation based on his engagement in those activities. *See id.* at 60–61.

Because Trevizo failed to establish a prima facie retaliation claim, the trial court erred by denying the District's plea to the jurisdiction as to this claim. We reverse and render judgment dismissing this claim against the District.

**D. Hostile-Work-Environment Claim**

Finally, Trevizo claims he was subject to harassment, which resulted in a hostile work environment, because of his age, disability, and participation in a protected activity. The elements of a hostile-work-environment claim are: (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on the employee's protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action.[11] *Aguilar*, 600 S.W.3d at 86–87. The alleged conduct required to support a hostile-work-environment claim must be both objectively and subjectively hostile or abusive. *Esparza v. Univ. of Tex. at El Paso*, 471 S.W.3d 903, 913 (Tex. App.—El Paso 2015, no pet.). "Abusiveness requires extreme conduct and takes a middle path between making actionable conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Id.* In

---

[11] If the alleged conduct was carried out by a supervisor, the plaintiff need only to show the first four elements. *Donaldson*, 495 S.W.3d at 445.

assessing abusiveness and hostility, courts consider "the totality of the circumstances including frequency, severity, physical threats or humiliation, and whether the abusive conduct unreasonably interfered with the employee's work performance." *Id.* If the alleged conduct is not severe or pervasive enough to create an objectively hostile or abusive work environment—*i.e.*, an environment a reasonable person would find hostile or abusive—it is not actionable. *Id.*

Trevizo alleges the following actions amounted to harassment:

- After he returned to work in February 2017 following his medical leave, his supervisor, Jesus Reyes, told him "that [he] needed to fix his attitude or find another job" and "at [his] age it would be difficult for [him] to find another job."

- Upon his return to full-duty work in August 2017, he was "not placed in his previous Operator [] position or allowed to perform the duties he was previously performing" but instead "was required to perform the heavy-duty and difficult projects such as cement work, burning weeds, cutting trees, and fixing gates."

- He was "constantly called in to the office for verbal counseling[.]"

- Younger employees were allowed to work both a Friday (11/3/2017) and a Saturday (11/4/2017) to earn additional compensatory time, while he was allowed to work only the Saturday. Only after he filed a Charge of Discrimination did the District give him sufficient compensation time to cover the holiday season.

- Throughout 2018, he was required to drive only older work vehicles and equipment without functioning windows, air conditioning, and other various safety issues.

- He was terminated after he was presented with the option of either going home or driving a truck he contends was unsafe.

The District argues the trial court erred in denying its plea to the jurisdiction on this claim because even assuming all of the above claims are true, they do not establish a hostile work environment. We agree. Trevizo's allegations, considered individually or collectively, are not severe or pervasive enough create an objectively hostile or abusive work environment and thus are not actionable. *See, e.g.*, *Okeke v. Administrators of Tulane Educ. Fund*, No. 21-30451, 2022 WL

25

1025991, at *5 (5th Cir. Apr. 6, 2022) (per curiam) (being subjected to a harder work schedule, among other things, not sufficiently severe or pervasive enough to create objectively hostile or abusive work environment); *Donaldson*, 495 S.W.3d at 446 (issuance of corrective action after employee's injury while awaiting medical attention, reduction of workload, and reassignment of office not sufficiently severe or pervasive enough to create objectively hostile or abusive work environment); *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 646–47 (Tex. App.— Houston [1st Dist.] 2015, no pet.) (evidence supervisor referred to plaintiff by racial slur and made comments about her weight and appearance on several occasions not sufficiently severe or pervasive enough to create objectively hostile or abusive work environment); *Esparza*, 471 S.W.3d at 913–14 (allegations of supervisors intimidating plaintiff, removing her from important projects, delaying approval of vacation time, and changing her work schedule not sufficiently severe or pervasive enough to create objectively hostile or abusive work environment).

Because Trevizo failed to establish a prima facie hostile-work-environment claim, the trial court erred by denying the District's plea to the jurisdiction as to this claim. We reverse and render judgment dismissing this claim against the District.

## CONCLUSION

For the above reasons, we reverse the trial court's order denying the District's plea to the jurisdiction, render judgment granting the plea, and dismiss Trevizo's claims for want of jurisdiction.

YVONNE T. RODRIGUEZ, Chief Justice

October 27, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

26